```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Linda Butterman,                  :

    Plaintiff,               :

  v.                             :   Case No. 2:08-cv-0137

                                                            :   JUDGE FROST

Commissioner of Social
Security,
                                                   :

    Defendant.

<u>REPORT AND RECOMMENDATION</u>

## I. <u>Introduction</u>

Plaintiff, Linda Butterman, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability benefits and supplemental security income. Those applications, filed on June 16, 2004, alleged that plaintiff became disabled on May 1, 2003, due to mental health issues.

After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on July 11, 2007. In a decision dated August 7, 2007, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on December 14, 2007.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on May 23, 2008. Plaintiff filed her statement of errors on July 23, 2008. The Commissioner filed a response on September 22, 2008, and plaintiff filed a reply brief on October 7, 2008. The matter is now ripe for decision.

## II. <u>The Lay Testimony</u>

Plaintiff's testimony at the administrative hearing revealed the following. Plaintiff, who was 58 years old at the time of

the hearing, completed the ninth grade. (Tr. 297). She was in some special education classes. She has never had a driver's license. (Tr. 298). At the time of the hearing, she was working part time for a hospice for a total of 18 hours each week. (Tr. 299). She works as a housekeeper. She was not sure she could perform that job on a full-time basis. (Tr. 300). Prior to working for the hospice, plaintiff worked part-time as a custodian at a church. (Tr. 302). She was receiving welfare benefits at the same time, and was convicted of fraud and placed on probation. (Tr. 303-04).

Plaintiff testified that she is unable to work full time because of the medication she is taking for her psychological problems. (Tr. 305). Her medication causes her to experience swelling and a dry mouth. Plaintiff believed she could stand for two hours of time, but no longer, because of bursitis in her right foot. (Tr. 306). She can walk a mile and possibly two miles, and she can also sit for two hours. (Tr. 306-08). She can lift up to ten pounds. (Tr. 308).

In a typical day, the plaintiff is able to dress herself, cook her meals, and do her laundry. She also goes grocery shopping at least once a week and occasionally goes to a restaurant or to the movies. (Tr. 309). She watches television, rides a bicycle, and reads magazines. (Tr. 311).

In response to questioning from her attorney, plaintiff described work situations which she finds to be upsetting. She testified that she feels intimidated by coworkers. (Tr. 313 to 15). She does see a counselor for mental health issues and also a doctor who prescribes medication for her. (Tr. 315). She obtained her current employment through a job coach and still has a job coach on the job. (Tr. 318-19).

Ms. Donelson, a case manager for the Central Ohio Mental Health Center, also testified at the administrative hearing. She testified that she had been meeting with plaintiff on a weekly basis since 2004 to help her deal with stressful situations at

work and at home. (Tr. 320-21). She testified the plaintiff has difficulty understanding interactions with other people and has a tendency to misinterpret their words or actions. (Tr. 321). Generally, she reacts angrily in these situations. (Tr. 322). Ms. Donelson testified that the program through which plaintiff has found employment is called Experience Works, which is a program for people over the age of 50 who need job support. Ms. Donelson agreed that plaintiff could not work on a full-time basis because of the difficulty dealing with job stress. (Tr. 322-23). Ms. Donelson also testified that plaintiff would not be able to maintain employment without job coach because the job coach helped her to deal with situations as they arise. (Tr. 324-25). Finally, plaintiff would find it difficult to deal with even minor changes in her work routine without experiencing significant stress. (Tr. 332-33).

### III. Summary of the Records

Because the issue in this case relates exclusively to whether plaintiff is precluded, from a psychological viewpoint, from performing competitive employment, the Court will summarize only those documents in the record which address this issue. Plaintiff's caseworker completed a daily activities questionnaire on plaintiff's behalf on December 13, 2004. She indicated that plaintiff's personality disorder causes a deficit in her interpersonal skills which made it impossible for her to maintain employment and that she also had a significant limitations based upon her anxiety disorder. Plaintiff reported some difficulty in getting along with coworkers but no problems with supervisors. She experienced significant mood instability and anxiety and her personality traits contributed to an inability to develop and maintain positive interpersonal relationships. She also lacked the coping skills needed to manage daily life stress. She noted that plaintiff had difficulty reaching her treatment objectives due to her personality disorder. (Tr. 141-44).

Dr.Forti , a psychologist, completed a questionnaire on

January 8, 2003 indicating that plaintiff experienced significant bouts of depression due to her self-perception and self-esteem issues.  Her IQ was in the low average range but she had a poor tolerance for frustration.  She had limited social skills and demonstrated difficulties with authority figures.  Her ability to tolerate stress was poor.  Her diagnoses included an adjustment disorder with depressed mood and a personality disorder. (Transfer 151-53).  Dr. Forti also attached her assessment report from September 12, 2002, which was prepared in order to determine whether plaintiff was able to comply with her conditions of probation.  That assessment indicated a moderately severe mental health disorder and plaintiff was described as a person whose "social and emotional intelligence is far behind what might be expected of a 53-year-old woman...."  Her GAF was rated at 65. (Tr. 154-59).

Plaintiff's mental status was also assessed by Dr. Schonberg on January 21, 2003.  Plaintiff told Dr. Schonberg that she was in regular classes in school.  She had no physical complaints.  She appeared mildly anxious and depressed and said she was undergoing counseling for her anger management.  Dr. Schonberg diagnosed a dysthymic disorder and a personality disorder and rated plaintiff's GAF at 60.  The most significant limitation identified was a moderate impairment in the ability to maintain attention, concentration, persistence and pace and to withstand the stress and pressure associated with daily work activity. However, plaintiff was able to perform at least simple repetitive work tasks.  (Tr. 165-69).

These records were reviewed by a state agency review who concluded that plaintiff did not have a severe psychological impairment.  (Tr. 170-75).  However, a different state agency reviewer concluded that plaintiff's impairment was severe and that she had moderate limitations in a number of work-related areas including those dealing with social interaction and adaptation.  (Tr. 177-88).

A number of progress notes were submitted from a psychiatrist who saw plaintiff for purposes of prescribing medication. Many of the notes indicated that plaintiff was stable and doing well and that her ability to handle stress had improved. She also reported that she liked her job, although she noted that at times she is not treated like an equal at work. The last report, dated April 18, 2007, stated that she was "generally doing fine." (Tr. 192-217).

Ms. Miracle, the Director of Hospice of Morrow County, Inc., where plaintiff is employed, wrote a letter indicating that plaintiff's ability to work independently is limited and she does require reassurance and explicit instruction with any minor change from her structured work assignments. Although plaintiff attempted to be an accepted member of the office team, she often experienced bouts of obsessive thinking, did not perceive events correctly, showed insecurity and anger, and exhibited angry behaviors. Ms. Miracle believed that plaintiff would have severe difficulty working in an independent environment. (Tr. 240).

Notes were submitted detailing plaintiff's contact with her caseworker in 2006 and 2007. Most of the counseling provided to her dealt with her home situation or stresses that she encountered at work. Many of the notes were made by Ms. Donelson and reflected the testimony which she gave at the administrative hearing. (Tr. 241-61).

Plaintiff's job coach, Joey Thompson, wrote a memorandum on July 10, 2007 to Ms. Donelson. He noted that plaintiff had been able to deal with some interpersonal misconceptions with colleagues, but changes to her work schedule or duties were very difficult and she had problems with discerning appropriate work boundaries. He believed that her mental and physical stamina did not allow her to work on a full-time basis. Finally, he felt that she needed ongoing vocational support and coaching even to maintain her current job. (Tr. 262-262A).

IV. <u>The Medical Testimony</u>

In addition to plaintiff, a medical expert, Dr. Wyatt, testified at the administrative hearing. Dr. Wyatt, who is a psychologist, believed that plaintiff suffered from an affective disorder and a personality disorder. These disorders caused plaintiff to have a mild impairment in her activities of daily living, a moderate to marked impairment in her social functioning, a mild impairment in her concentration, and no episodes of decompensation. (Tr. 336). She would also have moderate difficulty managing stress and using judgment. However, she can maintain attention and follow simple instructions. She has a moderate difficulty relating to the public and a slight to moderate difficulty completing a workday, although she has a marked impairment in adapting to work changes given without advance notice. Her persistence is moderately impaired. (Tr. 336-37). She could deal with production quotas as well if she were advised by them in advance. (Tr. 337). She should have very little contact with the general public and superficial contact with coworkers. (Tr. 338). She would not need a job coach in order to maintain employment. (Tr. 340).

V. The Vocational Testimony

A vocational expert, Mr. Kigger, also testified at the administrative hearing. He identified plaintiff's past employment as a housekeeping cleaner as light and unskilled. (Tr. 346). He was asked to assume that plaintiff had no physical limitations but was limited psychologically as described by Dr. Wyatt, with exception that she should have no contact with the general public. With these restrictions, she could not perform her past work, but there were a number of jobs at the medium, light, and sedentary level she could perform, such as dishwasher, packer, laundry folder, porter, and table worker. (Tr. 347). If however, plaintiff needed reassurance and explicit instructions for even minor changes in her job, had bouts of obsessive thinking, misconstrued events, and acted out in the workplace, she would not be employable. (Tr. 350).

## VI. The Commissioner's Decision

Based upon the above evidence, the Commissioner concluded that plaintiff suffered from two severe impairments, an affective disorder and a personality disorder. The Commissioner further found that plaintiff had the residual functional capacity to work at all physical exertional levels but that she would have difficulty managing stress, moderate difficulties relating to the public and persisting in work-related tasks, and a marked limitation in the ability to handle changes in the workplace. She could perform 3-5 step tasks in an environment which required very little contact with the general public. With these limitations, plaintiff could perform those jobs identified by the vocational expert. As a result, she was not entitled to disability benefits or supplemental security income.

## VII. Analysis

In her statement of errors, plaintiff raises three issues. First, she asserts that the Commissioner erred in finding that she could perform any jobs given her marked limitation in the ability to handle changes in the workplace and the fact that the jobs identified by the vocational expert did not typically provide advance notice of such changes. Second, she asserts that the Commissioner erred in reaching a decision concerning her residual functional capacity without propoerly considering evidence from her case manager, job coach, and work supervisor. Finally, she asserts that because the evidence of her disability is either strong or overwhelming, this case should be remanded for an award of benefits. The underlying question is whether the commission decision is supported by substantial evidence.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402

U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff's first assignment of error suggests that there is a fatal discrepancy between the Commissioner's finding that she cannot tolerate changes in her work routine without being given adequate advance notice, and the vocational expert's testimony that the jobs he identified as being within plaintiff's capabilities do not typically provide for such notice.  For the following reasons, the Court rejects this argument.

As the Commissioner's memorandum points out, the Commissioner specifically accepted Dr. Wyatt's testimony concerning plaintiff's residual functional capacity.  Dr. Wyatt noted a marked impairment in the ability to deal with changes in work routine.  The vocational expert was asked to assume, in giving his testimony, that plaintiff has this exact limitation. He nonetheless identified jobs that someone with this and

plaintiff's other limitations could perform.  In response to questioning from the ALJ, he testified that most of these jobs involved performing the same duties every day, so that changes of the sort which plaintiff had difficulty dealing with would be infrequent or non-existent.  Thus, although he also testified that *if* there were changes in the routines of these jobs, advance notice would not typically be provided, he did not testify that such changes would be frequent enough to prevent plaintiff from doing these jobs.  That testimony would have permitted a reasonable person to conclude, as the Commissioner did, that plaintiff could do these jobs.  Thus, there is no fatal inconsistency between the vocational expert's testimony and the Commissioner's residual functional capacity finding.

Plaintiff's second argument, based on Social Security Ruling 06-3p, raises the question of whether the Commissioner adequately discussed the non-medical evidence provided by Ms. Donelson, Mr. Thompson (the job coach), and Ms. Miracle (plaintiff's work supervisor).  As described above, each of the three was knowledgeable about plaintiff's work situation and her work performance, and each expressed significant doubts about her ability to work either on a full-time basis or in any non-coached work setting.  The Commissioner does not respond directly to plaintiff's argument that this evidence had to be taken into account under the applicable ruling, but rather characterizes the issue as a rehash of plaintiff's first argument and asserts that because the ALJ's decision recites this evidence, it must have been taken into account in the final administrative decision.

Plaintiff is clearly correct in her assertion that it is impossible to tell from the Commissioner's decision exactly how the evidence given by Ms. Donelson, Mr. Thompson and Ms. Miracle was evaluated or weighed.  Although the decision refers, in general language, to Ruling 06-3p (Tr. 21), it does so only as

part of the recital of various regulations and rulings that apply to almost any decision, and there is no acknowledgment in this decision that the non-medical evidence presented a significant issue to review, or how the Commissioner performed that review. It is not enough, either in this or other contexts, to speculate that because the Commissioner is presumed to know the law and has summarized all of the evidence, the Commissioner must have correctly applied the law to that evidence. <u>Cf. Rogers v. Comm'r of Social Security</u>, 486 F.3d 234, 242 (6th Cir. 2007). Other courts have required a remand when no reasons are given for rejecting other evidence which, if believed, would lead to a finding of disability. <u>See, e.g. Penichter v. Astrue</u>, 2008 WL 822087 (D. Utah March 26, 2008), <u>citing, inter alia, Bowman v. Astrue</u>, 511 F.3d 1270 (10th Cir. 2008). The Court concludes that a similar remand is required here. However, because the Commissioner should be given the opportunity, in the first instance, properly to apply this regulation and to weigh this evidence, the Court does not believe that it should simply award benefits.

## VIII. <u>Conclusion</u>

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## IX. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified

part of the recital of various regulations and rulings that apply to almost any decision, and there is no acknowledgment in this decision that the non-medical evidence presented a significant issue to review, or how the Commissioner performed that review. It is not enough, either in this or other contexts, to speculate that because the Commissioner is presumed to know the law and has summarized all of the evidence, the Commissioner must have correctly applied the law to that evidence. <u>Cf. Rogers v. Comm'r of Social Security</u>, 486 F.3d 234, 242 (6th Cir. 2007). Other courts have required a remand when no reasons are given for rejecting other evidence which, if believed, would lead to a finding of disability. <u>See, e.g. Penichter v. Astrue</u>, 2008 WL 822087 (D. Utah March 26, 2008), <u>citing, inter alia, Bowman v. Astrue</u>, 511 F.3d 1270 (10th Cir. 2008). The Court concludes that a similar remand is required here. However, because the Commissioner should be given the opportunity, in the first instance, properly to apply this regulation and to weigh this evidence, the Court does not believe that it should simply award benefits.

## VIII. <u>Conclusion</u>

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## IX. <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified

proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge